N° 22.   Supreme Court of the United
States of January Term 1834.

*Gabriel Richard, Antoine Dequindre &*
*Louis Beaufait plffs in Er vs—*          In Error to the Supreme Court of
*Francis Labadie—*                         the Territory of Michigan.—

The plaintiffs in Error in this cause having been three times solemnly called by the Marshal to come into court and prosecute this writ of error to the Supreme Court of Michigan and failing so to do.  It is therefore ordered and adjudged by this court that this writ of error be and the same is hereby dismissed with costs. March 8.

I, William Thomas Carroll Clerk of the Supreme Court of the United States do hereby certify that the above is a true copy of the order and judgment of said Supreme Court made in said cause at January Term Eighteen hundred and thirty four.— Extracted from the minutes of said Supreme Court—

[SEAL]                              In Testimony whereof, I hereunto sub-
Costs—                              scribe my name and affix the seal of said
Clerk —   $44.17                    Supreme Court this twenty eighth day of July
Attorney   20.00                    in the year of our Lord one thousand eight
                                    hundred and thirty four.—
$64.17 — Taxed by                        W^M Tho^s Carroll
                                    Clerk of the Supreme Court of the United
                                                      States.

## [Case 1233, Opinion]

### Case

François Labadie— a roman-catholic— resident in the Parish of St. Anne— made application some years ago to the Supreme Court of Michigan, to be divorced from his wife:  He was divorced (for supervenient causes) a vinculo matrimonii and subsequently— against the earnest remonstrances of the Curate of the Parish of Ste. Anne—(M Gabriel Richard) married another woman.  The ceremony was not performed according to the rites of the Church, but by a civil majistrate.

Principally by reason of this second marriage, Mr. Labadie was excommunicated by Mr. Richard;—— & for words spoken by him in the Church on that occasion —— & for other words spoken out of Church in relation to the same matter, Mr. Richard was sued in an action of slander.

While the action was yet pending, but after a heavy virdict was found for the plaintiff, Mons. Richard was elected Delegate in Congress from this Territory—— As Delegate, he attended in the winter of 1823–4, & returned; —— After his return judgment was rendered upon the Virdict;—and, more than 50 days anterior to the period appointed for the second session of the same Congress,— Mr. Richard was arrested upon a Ca. Sa. & put into close confinement.

His health became impaired- & other circumstances rendering it expedient & necessary, he procured sureties & was allowed the benefit of the prison limits.

The time having now arrived, when it becomes necessary for the Delegate to set out for Washington, (if he go at all;)

The Question is asked

Is it legally competent for Mons. Richard to attend that session—without subjecting his sureties upon their Bond?

I am of opinion that it is legally competent for Mons. Richard to attend the approaching Session of Congress;— & that, no unreasonable time being taken, in going—remaining—& returning, his sureties will not be compellable to pay the sum specified in their Bond.

In arriving at this opinion, I assume for granted that a Delegate from a Territory to Congress, has all the same rights & privileges — (except that of voting;) which a Senator or a Representative in Congress possesses:— I have not now time to examine the Acts of Congress on this head — nor do I deem such examination very important:— for it is very clear to my mind, that if there were no statutory or constitutional provision on the subject of the privileges of Members of Congress & of Delegates they must necessarily be protected from arrest, & from all manner of restraint, while in the performance of the hig[ly] important duties devolving upon them:— I believe howe[ver] that by express provision of law, "Delegates," are placed in this respect, upon the same footing with Members  In the 6th Sec. of the 1st. Article of the Constitution, it is provided that — in all cases except treason, felony & breach of the peace Senators & Representatives shall be privileged from "arrest" during their attendance at the session of their respective Houses, & in going to & returning from the same"

The term "arrest" is sometimes used in a very restricted sense,—indicating only the first effective process in a suit or prosecution— the *commencement* of a judicial proceeding ——That the term cannot have been used in that limited sense by the Framers of the Constitution, is I think very manifest; for were it so— the whole purpose of the provision would, as frequently as otherwise perhaps be frustrated:—— That purpose unquestionably is, to secure to the community, the free- & unrestrained attendance of all the members— & for the highest & most important of all political objects. —— Congress, composed of Delegates, as well as Senators & Representatives, is the Depositary of the most high interests of the Nation;— to its members is committed for the time being, the sovereign power of the whole people;— Each one is specially appointed to enforce the interests of those, by whom he has been chosen,—& to guard the safety— secure the liberties & promote the happiness of the whole! —— It is impossible to believe that such high purposes may be defeated by the interposition of a mere private claim — nor by the enforcement of any individual right! —— Such construction surely will be given to the clause alluded to, as will, in all circumstances, give effect to its object— its spirit— its evident intent. To understand the term "arrest" in its more enlarged sense, *will be,* to give effect, to that intent, so plainly discoverable  —The clause would then provide for a personal restraint effected by the service of a capias ad satisfaciendum as well as of a capias ad respondendum:—& the construction is in perfect conformity with the etymology of the word as well as with its popular & ordinary meaning.

Between an arrest then, on original—mesne, & final process, relatively to *this* matter, I apprehend there is no difference; & I pass to a consideration of the only difficulty which it seems to me the case presents——I allude to the fact that the

ca. sa. was served—& the "arrest" made, before the privilege extended— or while it remained suspended; at a time when no session of the Congress was holden, & when no political necessity existed for the Delegate to be on his way—& when therefore it may be esteemed perfectly competent for the plaintiff to cause his process to be served—— And the arrest having been so effected, it may be said that a fixed, positive right had accrued to Labadie, of which he cannot be deprived without indemnification;—& that if the public be deprived of the services of its Delegate, it is rather attributable to the legal delinquency of the Delegate, for which Labadie is not responsible, than to *his* direct agency.

It is true that Mr. Richard must in contemplation of the law, be now deemed to owe to Mr. Labadie, the sum for which judgment was rendered & that until that judgment is reversed, the law, imposes upon Mr Richard an obligation to pay it— that tho' the arrest of the body upon a ca. sa. does not operate as *actual satisfaction*, yet that in other countries — & *perhaps* here, the detention of the debtor, may be a pledge to secure the ultimate payment of the debt.

But Mr Labadie can have no *property* in the body of Mr Richard;— he cannot take in satisfaction his "pound of flesh"— nor convert to his own use so much of his blood & bones as will precisely equal in value, the dollars & cents named in the judgment; & I remain yet to be persuaded that he may retain his body in pledge, while public duties of high import, require his presence elsewhere. —— I even doubt the legal right of Mr Labadie to take out his Ca. Sa. — No statutory provision of this Territory expressly giving this right, can I beleive be found — By the Ordinance, (our fundamental law) Com law jurisdiction, generally, is given to our Supreme Court, & in the 2nd of the fixed articles of compact contained in that Ord. of 1787, the people are guarantied in the right that "all judicial proceedings, shall be according to the course of the Common law". —— There once existed a statute here, taken from the Virginia Code, which, with the Com. Law, adopted also all remedial English Statutes, passed in aid of that law prior to James 1st— but that statute has long since been repealed — & without anticipating consequences probably, our Local Legislature as early as in 1810, passed an act declaring that no British statute whatsoever, whether ancient or modern, conformable to the nature of our Gov[t] or not, should have any valid force here.

Now I take it to be well established that by the ancient common law, no person could be arrested or deprived of his personal liberty except for *public offences*, or for private wrongs accompanied by *breach of the peace* —— It may well be doubted therefore, whether abstractedly from all other considerations, the imprisonment of Mr Richard upon this ca. sa. were legal:—— But admitting that long use, (without proper regard to the repealing statute) may have given sanction to the practice,— still it must be admitted, that whatever right a creditor may have to commit to close confinement his debtor, is a mere *political* right— it is a right which *natural justice* does neither give, nor enforce— It is a right which does not uniformly prevail among civilized nations, & which does not at this time I beleive generally obtain in Europe. And if wheresoever it does obtain, it be the result of political expediency only—it must necessarily give way, when motives of more imperious political expediency exist:—— It must be deemed of minor force, when found to conflict with the paramount political rights of the whole community:— It must cease to exist, when for example, its enforcement would result in the intire loss, to this whole Territory, of its representation in Congress.

If this view of the matter be correct, then Mr Labadie possesses no vested right in the person of Mr Richard, or it is a right, which in the nature of things, must

cease to exist, or must remain suspended, while political rights of paramount force, take precedence of it. It is the right of this Territory that it should be represented in Congress by Mons. Richard— it is the correlative duty of Mons. Richard to proceed to Washington — there representing it, to advance its interests & inforce its just claims—But he is this moment under arrest — The Ca. sa. not being yet set aside nor vacated, continues to detain— "to stop"— to arrest him! If the privilege specified in the 6th Sec. of the 1st. article of the Constitution apply to a Deligate, is not the case of Mr. Richard, as well within the *words*, as it clearly is within the spirit of the clause? —If the clause in the constitution alluded to, be not applicable to a Delegate, then the provisions of the ancient common law —or rather the principles of right reason, & of all social law, out of which the provision of the clause of the constitution, grew, will be found I beleive of equal force, & at least equally comprehensive.

The case of Mr. Giffard, said to be reported in 1 Hats. Prec. 169— or perhaps 53 —(for the book is not I beleive in the Territory) was the case of one to whom privilege was deemed to extend—altho' he was in prison upon ca. sa.— The case of Barthelett & Hebbes (5 T. R. 586) is the case of one also to whom privilege was extended tho' in execution— the analogy is strong— Others it is beleived may be found, amply supporting the position laid down in Jefferson's manual 13. — The cases of King vs Coit 4 Day's Rep. (Con.) 129— Bolton vs Martin 1 Dal. 296 Coxe vs McClenachan 3 Dal. 478, & the whole section title "Privilege" in Jefferson's Manual, amply support it is beleived the grounds here assumed.

If then for the reasons stated, & for others more happily urged in the American authorities quoted, it be considered legally competent for Mr. Richard to set out for Washington — it must be because he is under a strong moral & political obligation to go:—— It is an obligation imposed upon him, by the joint act of the people & of the law:—— If the act of going for that purpose be a legal act, if the duty be one of the Law imposes, I do not see how it can be deemed an illegal Escape —if it be not an illegal escape, then his sureties are not holden— at least so long as the privilege exists. ——Should the public enemies take him by force away, would it be deemed an Escape? —Should he die, would his sureties be responsible? —— His departure would be the result of physical necessity— his sureties would be exonerated.—— Should he be taken upon a charge of Treason to a distant Judicial District of the United States — it would be the act of the law, his sureties would not be responsible— If it be by the Act of the Law, that he now attends the session of that Congress to which he was elected, if his going should now be enforced by a moral— a political necessity, tho' of a different nature, yet equally imperative,— why should not his sureties in like manner be discharged?

I do not affect to be conversant with Parliamentary law, nor have I time or means to examine what decided cases I may find — I therefore feel under some embarrassment in forming an opinion upon the question propounded perfectly satisfactory to myself, yet so far as I may have enabled myself to comprehend the matter, & especially the reason of the case, I am persuaded that Mr Richard may with safety depart for Washington & there attend the Session of Congress:— returning without unreasonable delay — & that his departure, under the circumstances ought not to be deemed such a breach of the bond, as to subject his Sureties

—— What may be the relative situation of the parties after the Session shall have closed & the privilege ceased, in regard to the *subsequent* continuance of Mr Richard within the Jail limits, I am not enquired of, nor is it necessary now to examine.
Detroit Nov 1. 1824    Wᴹ Woodbridge

I have read the above case, and concur in the views taken and the opinion expressed by Mr Woodbridge.
Detroit Novʳ 5ᵗʰ 1824.    A. G. Whitney.